CYNTHIA BANKS

    Plaintiff,

vs.

ANTOINE D. KEANE, 982 SW 159TH DR, LLC, GLOBAL PRODUCTIVE BUSINESS, INC., SFNY GROUP, INC., NATALIA UTRERA, SPIEGEL & UTRERA, P.A., KRISTEN WHITE, and FLORIDA CAPITAL REALTY 100% COMMISSION LLC d/b/a FLORIDA CAPITAL REALTY

    Defendants.

_____/

IN THE U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

**COMPLAINT**

Plaintiff, CYNTHIA BANKS, sues the Defendants, ANTOINE D. KEANE, 982 SW 159TH DR LLC, GLOBAL PRODUCTIVE BUSINESS, INC., SFNY GROUP, INC., NATALIA UTRERA, SPIEGEL & UTRERA, P.A., KRISTEN WHITE and FLORIDA CAPITAL REALTY 100% COMMISSION LLC d/b/a FLORIDA CAPITAL REALTY and states:

**Jurisdiction, Parties and Venue**

1. The Defendants in this action conspired to and obtained Plaintiff's home through a fraudulent scheme This Court also has original jurisdiction pursuant to 28 U.S.C. § 1331 over claims brought under 18 U.S.C. §§ 1961 et seq. (the Racketeer Influenced and Corrupt Organizations ("RICO") Act). In addition, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. § 1367

2. Plaintiff is a resident of this County and is *sui juris*.

3. Defendant, 982 SW 159TH DR, LLC ("982 LLC") is a Florida Corporation doing business in this County.

4. Defendant, ANTOINE D. KEANE, ("KEANE") is a New York resident and is *sui juris*.

5. Defendant, GLOBAL PRODUCTIVE BUSINESS, INC. ("GLOBAL"), is New York corporation doing business in South Florida, but is not registered with the Florida Division

of Corporations.

6.     Defendant, SFNY GROUP, INC., ("SFNY") is a Texas Corporation with its principal places of business in California and New York.

7.     Defendant, NATALIA UTRERA, ("UTRERA") is an individual residing and/or working in this District and is *sui juris*.

8.     Defendant, SPIEGEL & UTRERA, P.A., ("SPIEGEL & UTRERA") is a Florida corporation doing business in this District.

9.     Defendant, KRISTEN WHITE, ("WHITE") is an individual residing and/or working in this District and is *sui juris*.

10.    Defendant, FLORIDA CAPITAL REALTY 100% COMMISSION LLC D/B/A Florida Capital Realty ("FLORIDA CAPITAL") is a Florida Corporation doing business in this District and with offices in this District.

11.    Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Southern District of Florida is where one or more of Defendants reside and because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

**<u>Factual Allegations</u>**

12.    Plaintiff is a 67-year-old single woman and had lived in her home at 982 SW 159th Drive in Pembroke Pines since she purchased it in July of 2021. The Plaintiff is retired from the U.S. Border Patrol and U.S. Immigration. The Plaintiff's main source of income is her modest retirement pension and Social Security benefits.   Plaintiff suffers from a number of medical conditions and is physically disabled.

13.    In the Summer of 2024, KEANE was introduced to the Plaintiff by the Plaintiff's daughter, Brianna McBean. KEANE represented to Plaintiff that he held an MBA from Stanford University and was a successful businessman who operated multiple companies. He told Plaintiff he could consolidate her debts for long-term generational wealth by "leveraging" the equity in her

home. He repeatedly emphasized his expertise and trustworthy reputation, never disclosing that he was a convicted felon who had served prison time in Las Vegas.

14. On or about 7/11/24, Plaintiff told KEANE she wanted to refinance her home to pay off her debts to her daughter, sisters, her insurance premiums with National Life (NL), get a new roof and replace the air conditioner. KEANE asked Plaintiff to provide a spreadsheet detailing her outstanding bills. KEANE claimed that he would handle the refinance process using his trusted lawyer and her law firm, Defendants UTRERA, and SPIEGEL & UTRERA, P.A., and insisted that they both be represented by that firm. He told Plaintiff that an LLC would be formed as a joint venture to hold title to the home and that the refinance proceeds would be used to pay off her debts and improve her financial situation.

## The Formation of 982 LLC and Transfer of Plaintiff's Home

15. On or about 8/19/24, at KEANE's instruction, Defendants, UTRERA and SPIEGEL & UTRERA, representing both KEANE and Plaintiff, created 982 SW 159 DR LLC to hold title to the Plaintiff's home, and prepared Articles of Organization, indicating the principal place of business would be at 1221 Brickell Ave., Suite 900, an address used by KEANE. Plaintiff did not get the chance to review nor receive beforehand copies of all the proposed LLC formation documents as she was recovering from back surgery and four months prior a bladder prolapse surgery that made medical care seriously ongoing. However, she did sign the Waiver of the Notice of the Meeting of Members on 8/22/24 in reliance upon the representations of KEANE and SPIEGEL & UTRERA that everything was in order.

16. According to the Minutes of the Organization Meeting the Manager of 982 LLC was to be Keen Vision Properties, LLC[1] and 982 LLC's Secretary would be Defendant WHITE.

---

[1] Keen Vision Properties is another Florida Limited Liability Corporation controlled by KEANE and incorporated in January 2024.   Keen Vision's managing members are listed as SFNY Management, Inc. and Keen Vision Group LLC. SFNY Management, Inc., is a New York Corporation formed in February 2024 and its principal address is listed as 112 W. 34th Street, 18th Floor. Keen Vision Group, LLC is a New York LLC.   Both entities are also controlled by KEANE.

Initially, Plaintiff was to own 25% of the LLC, with KEANE holding 75%, in accordance with 982 LLC's corporate documents.

17.     However, KEANE never contributed any capital or funds, while Plaintiff transferred her entire home into the LLC. In accordance with Sections 1.3 - 1.7, of the Operating Agreement, the Interest Holder's Capital Account is to be credited with the Interest Holder's contributions to the LLC and includes the fair market value of any assets contributed to the LLC.

18.     Under the Operating Agreement, after adjustments to the Capital Accounts for the Plaintiff's contribution of her home, the Plaintiff is entitled to 100% of the net value or distribution of proceeds. After the formation of 982 LLC, KEANE secretly amended the Articles of Organization and replaced himself with his company, GLOBAL, as the Manager. Plaintiff was never informed of this change.[2]   A copy of 982 LLC's Articles of Organization, Minutes of the Organization Meeting, Regulations and Operating Agreement, are attached hereto as Exhibits 1, 2, 3 and 4.

19.     On 12/3/24, KEANE persuaded Plaintiff to quit-claim the title of her home to 982 LLC, which he controlled. KEANE never disclosed that he intended to control the LLC entirely and retain all proceeds. Plaintiff relied on his promises and the representation by the law firm, not knowing that the firm failed to disclose a conflict of interest or advise her to seek independent counsel.   At all times material, UTRERA and SPIEGEL & UTRERA, represented both BANKS and KEANE and GLOBAL in the transactions.

### The Refinancing of Plaintiff's Home and Conversion of Proceeds by KEANE

20.     KEANE's had the Defendant, 982 LLC, hire his mortgage broker, Renay Proenza

---

2 Although the internal Operating Agreement listed Plaintiff as a 25% member of the LLC, her name was deliberately omitted from the public Sunbiz filing with the Florida Division of Corporations. This concealment enabled KEANE to take full control of the entity and conduct financial transactions, including refinancing and selling the property.   This discrepancy is not only negligent, it appears to be part of a broader scheme to defraud her. Their firm's actions allowed KEANE to conceal her ownership and misappropriate funds.

and Suncrest Capital Group. Plaintiff's original mortgage was through Amerisave.   KEANE, though the mortgage broker, obtained a $654,500 loan from BPL mortgage for 982 LLC, using the Plaintiff's home as collateral.    The loan closing was handled by Title Clearing and Escrow, LLC, and accomplished by KEANE using mail and electronic mail. KEANE never disclosed to Plaintiff that this was a Commercial loan instead of a Residential Refinance Loan.

21.     On or about 12/3/24, KEANE provided an Addendum to the Guarantee that falsely and knowingly misrepresented that Plaintiff's address was at 12555 NW 54th Court, in Coral Springs.   This was actually the address for TRT Equipment and Leasing, LLC, owned by Christoper Culliver, the boyfriend of KEANE's Real Estate Agent, Kristen White. TRT was administratively dissolved on or about 9/27/24. KEANE did this to conceal from Plaintiff and the lender that this Commercial loan was, in fact, a Residential Refinance Loan. KEANE also failed to disclose to the Plaintiff that the loan had a 5% Pre-payment penalty, despite knowing that the house would have to be sold.

22.     KEANE also induced Plaintiff into refinancing the home and keeping the proceeds of the refinance for himself and entities he controlled.   At all times material, UTRERA and SPIEGEL & UTRERA, represented both Banks and KEANE (and then Global) in the transactions.

23.     The Defendants. UTRERA and SPIEGEL & UTRERA, never advised the Plaintiff of any conflict of interest, did not seek or have her waive any conflict, nor did they ever advise her to seek her own counsel. UTRERA and the firm knew, or should have known, that only the Plaintiff, BANKS, was contributing anything to 982 LLC, and that KEANE intended to defraud the Plaintiff by taking at least 75% of the value of her home; and in fact, took all of it.

24.     Although the Operating Agreement stated that the parties' respective share of the LLC would be 75% to KEANE and 25% to Plaintiff, KEANE never put one dollar into the LLC. In contrast, Plaintiff was coerced into transferring her house to the LLC.   There was no consideration for this agreement on the part of KEANE.

5

25.     The LLC documents provide that the Capital Accounts would be adjusted by the parties' respective contributions.    Accordingly, the Plaintiff is entitled to 100% of any distributions from the LLC, less any out-of-pocket costs of KEANE, and/or administrative costs or fees (that were never agreed to, anyway).

26.     After the organization of the LLC, KEANE amended the Articles of 982 LLC to remove himself and add GLOBAL as the Manager; KEANE explained to the Plaintiff that he would get 75% of the "Loan to Value" of the appraisal.

27.     Although the corporate documents reflects that Plaintiff is a **25%** owner of the LLC, when the entity was filed with Florida Sunbiz, her name was entirely omitted—a critical move that enabled Antoine KEANE to proceed with financial dealings and property transactions without her consent or knowledge as part of a broader scheme to conceal her ownership, defraud the Plaintiff and misappropriate her funds.

28.     On 12/3/24 the refi loan was closed and Guaranteed by 982 LLC, secured by Plaintiff's home. On that same day, KEANE provided an Addendum to the Guarantee stating that his address was in New York, but falsely and knowingly misrepresented that Plaintiff's address was at 12555 NW 54th Court, in Coral Springs.    This was actually the address for TRT Equipment and Leasing, LLC, a company that was owned by WHITE's boyfriend, Christoper Culliver. TRT was administratively dissolved on or about 9/27/24, before the transfer of the title of Plaintiff's home to the LLC and the subject loan.    The home was refinanced for $654,500. After payment of the first mortgage and closing costs, the **$128,427.07** balance was wired to KEANE and/or the 982 LLC, and KEANE then converted the funds to himself. The Plaintiff never received one penny of proceeds of the refinancing of the home**.**

29.     On or about 12/9/24, KEANE, from this email account with GLOBAL, wrote to Plaintiff, copying his then GLOBAL employees, Wesley Rayner and Deighlah Champion, that "Now that the transaction has closed, I leave the day-to-day management to @Wesley Raynor who

6

is your point of contact. With back-end Operations and compliance performed by @Deighlah Champion. They both will be in contact to adhere to the strict compliance measures that's needed to protect the companies' interest and bottom line. Best regards, Antoine D. Keane, MBA."

30.     On or about 12/16/24, KEANE instructed Wesley Raynor, and their company, SFNY, to write to Plaintiff's son, to claim he made a mistake on an insurance policy for Plaintiff, adding Shareese name on the check by phone causing it to be blocked by the bank, and that KEANE had tried to reach out to no avail.

31.     12/17/24, Plaintiff BANKS wrote to KEANE:

> Good evening, I just got back from the funeral…I have some very serious financial obligations at the moment that needs immediate attention for my daughter and sisters. Their situations are dire and I need to remedy that as soon as possible before the week is out.   There's no heat and taxes are seriously past due.   Please advise at your earliest convenience. Thank you.

KEANE wrote back that same day:

> Why is this not going to Bri business email when is assigned to the entity. Also, Wesley and Deighlah will be in touch as again these payment requests can't be sent like this and there are limitations. Please don't email me about it as they are specifically on the matter to separate the companies and transactions between Bri and myself and the businesses."

32.     Despite numerous requests from Plaintiff that KEANE remit the funds from the loan refinance proceeds, he refused to do so.

**KEANE Fraudulently Induces Plaintiff to Sell House and Keeps the Proceeds**

33.     In December, 2024, KEANE persuaded Plaintiff that the best way to get her funds was to sell the house.

34.     On or about 12/31/24, KEANE emailed his real estate agent, WHITE, using the SFNY email address and logo, "How soon do you think 982 SW 159th Dr. can be sold and what value?   Ms. Cynthia wants to sell the property to be able to pay all her debts." On that same day, WHITE wrote to Plaintiff and to KEANE:

> "The average time on market for homes in the Estates of Pembroke Shores is 3-5

months. For a 4 bedroom 3 bath you can list from $910k - $980k depending on how fast you are wanting (sic) to sell.  Please let me know if you have any other questions or would like to better understand the listing process. Happy New Year!

35.      That same day, Plaintiff wrote back,

Good afternoon, Kristen. All the best to you for the upcoming New Year with lots of blessings and great health. In response to your listing on home sale; I would like to list my house at $1,085,000. There will be some room for negotiation and possibly a bidding war; bc, of the ambience and the house is updated and move in ready. However, the roof is original to the house.  Thanks in advance for your assistance in getting this project completed. Cynthia Banks.

36.      On or about 1/6/25, the Plaintiff's house was listed on the MLS by Defendants, WHITE and FLORIDA CAPITAL REALTY.

37.      On or about 1/8/25, KEANE had his staff send Plaintiff the resolution to have 982 LLC release $2,500 from the refinance amount, after much begging from the Plaintiff, to pay some of Plaintiff's daughter's living expenses.   This was the only distribution the Plaintiff received from the net proceeds of the refinance.

38.      On or about 1/12/25, Steven John Ahmuty III and his wife, Rocio Liz Olea, the buyers, presented a Sales Contract to Kristen White for $1,095,000 and the contract was accepted, and signed by BANKS and KEANE, as sellers (despite the fact that KEANE had already coerced Banks into transferring the title to 982 LLC.   A closing date was to be set in 30 days.   However, KEANE had the closing date moved up to 2/7/25, a date he knew was scheduled for Plaintiff's surgery which he did intentionally to prevent Plaintiff from exercising any right she had.

39.      The Plaintiff's house was outfitted for her medical assistance devices such as a wheelchair accessibility, walker, and scooter as she is a fall risk patient under doctor's care.

### The Sale of the Home

40.      Like the refinance loan that KEANE orchestrated three months earlier, the Closing was handled by a title company suggested by KEANE, First Premier Title Company LLC – which handled the sale and closing.

41.     Ultimately, the home appraised for less than the contract price. On 2/7/25, KEANE prepar   ed a Company Resolution of the 982 LLC, to sell Plaintiff's house to the above buyers, for $960,000, and had WHITE, sign it on behalf of GLOBAL, as "Manager." KEANE. Plaintiff electronically signed it using interstate wires. Neither WHITE nor FLORIDA CAPITAL REALTY, ever advised BANKS of WHITE's role as "Manager" of KEANE's entity, GLOBAL, nor obtained any conflict waiver as the real estate agent.   The Resolution indicates that an Agreement to Assign Contract was prepared; no such Agreement was provided to Plaintiff.

42.     On or about 2/7/25, KEANE had 982 LLC sell Plaintiff's home to Mr. Ahmuty and Ms. Olea, for $960,000. 982 LLC, paid a $24,000 commission to WHITE as the real estate agent. Additionally, a 5% pre-payment penalty was assessed against 982 LLC and paid to the refinance lender, a fee which KEANE never disclosed to BANKS when obtaining the loan.

43.     KEANE failed to remit to Plaintiff, either the $207,995.36 sale proceeds of Plaintiffs Banks home (at 982 SW 159 Dr., Pembroke Pines) nor the $128,427.07 KEANE received from the 12/3/24 refinance of the home.

### Insurance Policy

44.     Plaintiff told KEANE of her medical condition and let him know that she had an Indexed Universal Life (IUL) life insurance policy of $2.5mil Face Value with an Accelerated Benefit Rider (ABR) valued at $1.5mil for her disability. In addition to refinancing the home, KEANE also involved himself in Plaintiff's long-standing life insurance policy with National Life Insurance Company. The policy had a face value of $2.5 million with living benefits estimated at $1.5 million. Plaintiff had diligently made required premium payments with the help of her daughter and sisters due to her medical condition.

45.     KEANE assured Plaintiff that he would pay her outstanding policy premiums using the refinance proceeds and that she did not need to worry about maintaining the payments herself. He instructed her to authorize a payment of $33,450.68 from her refinance funds toward the policy,

which she agreed to with his VP Wesley Raynor via phone with the NL representative under the belief it would be paid immediately.

46.     KEANE and his associate, Wesley Raynor of SFNY, arranged the payment with the Plaintiff using a Bank of America business account. However, the payment was stopped by Bank of America due to a name mismatch—National Life failed to remove Plaintiff's daughter, Sharese Dixon-Banks, as the listed account holder, despite repeated requests beginning in April and May 2023. This administrative failure caused the transaction to be blocked.

47.     Despite being notified of the issue and provided with the correct overnight mailing address to reissue the payment, KEANE and Raynor failed to take action. As a result, the policy officially lapsed on 1/26/25, and Plaintiff lost her entire coverage and living benefit eligibility.

48.     During this time, KEANE coerced Plaintiff into assigning 25% of the policy's death benefit to 982 SW 159 DR, LLC, claiming it was necessary due to their "partnership" in the LLC. Plaintiff, under pressure and grieving due to a death in the family and getting prepared for the international trip for the funeral, was forced to complete the beneficiary paperwork by midnight that Friday before she could leave on the trip.   Plaintiff reluctantly complied without understanding the full consequences. KEANE had Raynor tell her that they needed to see the declaration page showing that the LLC was added to the policy.

49.     KEANE's failure to complete the policy payment—despite having received the necessary funds from the refinance, resulted in substantial financial harm to Plaintiff, as she lost approximately $2.5 million in insurance benefits.

50.      Plaintiff never received a refund for the failed payment and has been unable to reinstate the policy. This represents a devastating loss, caused by a combination of deceit, coercion, and negligence by KEANE, his associates and his entities, 982 LLC, GLOBAL and SFNY.

**Other Funds Converted by KEANE**

51.     KEANE also had Plaintiff give himself and GLOBAL access to her credit cards and credit

union which he said he needed to pay off her debts. Instead, KEANE paid himself and/or GLOBAL $5,450.00 from the credit cards, between November 2024 and December 2025.   He also had Plaintiff send to his company, GLOBAL, via Zelle $3,354.00 dollars he said would be used to pay her bills. Defendant GLOBAL. KEANE only reimbursed the Plaintiff $1,000 from the total on or about 12/5/24.

52.     KEANE also failed to advise the Closing Agent to pay off the alarm and water purification systems, in the respective amounts, $1,895 and $6,090.   Instead, KEANE had the realtor, WHITE pay him $3,850 and then he failed to pay those costs, converting the funds to his own use. The equipment is still in Plaintiff's name at the residence with contract under her Social Security number being reported to the credit bureaus monthly. She has been making the minimum payment on both since the sale of the property. The Plaintiff asked KEANE to have the debt paid from Escrow before closing but he refused.

53.     Plaintiff demanded KEANE reimburse her for the funds he converted but to date he has declined to do so.   Plaintiff is currently homeless and as a result of the Defendants' actions and now lives with her cousin.

**Keane's New York Law Suit**

54.     On or about 4/17/25, Plaintiff sent Keane a pre-suit demand to give him one more chance to turn over the money he owes the Plaintiff.

55.     Instead, Keane, through his attorney, filed a meritless suit against Plaintiff in New York, though there can be no basis for jurisdiction in New York.   The Plaintiff was served on 5/19/25. The suit seeks a declaration regarding the parties' respective shares of 982 LLC – which is stated in the corporate documents, and to declare that Plaintiff has not interest in his other entities – a claim that Plaintiff has never made. Additionally, Keane alleges counts for tortious interference and defamation, none of the acts are said to have occurred in New York.   A copy of the complaint is attached hereto as Exhibit 5.   This NY complaint is in contravention of the Operating Agreement which provides that the parties must first mediate in Miami-Dade County, and barring

a resolution, arbitrate in Miami.

56.     Plaintiff has complied with all conditions precedent to maintain this action and has retained the undersigned attorneys to bring this action and agreed to pay them a reasonable attorney's fee.

### Count 1 - Violation of RICO, 18 U.S.C. § 1962(c)

57. Plaintiff re-alleges and adopts ¶s 1-56, in their entirety as if fully stated herein.

58. The Defendants engaged in an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

59. The Defendants knowingly conducted and/or participated, directly or indirectly, in the conduct of the scheme to defraud Plaintiff of her home, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis designed solely to financially enrich the Defendants, and particularly KEANE by depriving the Plaintiff of her home as well as the proceeds of the refinancing of her mortgage and the sale of her home..

60. The scheme to steal the Plaintiff's home and the proceeds is racketeering activity, inasmuch as the enterprise exists for the purpose of taking the Plaintiff's home and depriving her of the proceeds.   The predicate acts of mail fraud are the regular way in which KEANE and the others operated the scheme and acts of mail fraud therefore were essential in order for the Defendants to accomplish the taking of the home and the proceeds thereof. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continues to attempt to intimidate the Plaintiff, and at least in the case of KEANE and his entitles – to convert other funds of the Plaintiff through mail and wire fraud involving her credit cards, credit union and Zelle account.

61. Defendants are engaged in inherently unlawful acts, as set forth above.

62. Plaintiff has been injured in as set forth above.

63. By reason of her injury, Plaintiff is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

## Count 2 - Fraud

64.     Plaintiff re-alleges and adopts ¶s 1-56, in their entirety as if fully stated herein.

65.     As stated in detail, above, KEANE obtained control of the Plaintiff's home by inducing BANKS with misrepresentations and omissions to transfer title of her home to an LLC he created and controlled and claimed to have a 75% interest in despite never contributing anything to the LLC.

66.     Plaintiff has been damaged by the loss of her home, as well as the loss of the proceeds of the refinancing of her home and sales proceeds and the other funds converted by the Defendants.

WHEREFORE, Plaintiffs demand judgment against Defendant KEANE for compensatory damages, together with interest, punitive damages, court costs and for such other relief as this Court deems just and proper.

## Count 3 - Dissolution of 982 LLC

67.     Plaintiff re-alleges and adopts ¶s 1-56, in their entirety as if fully stated herein.

68.     As stated in detail above, KEANE obtained control of the Plaintiff's home by inducing BANKS with misrepresentations and omissions to transfer title of her home to an LLC he created and controlled and claimed to have a 75% interest in despite never contributing anything.   In accordance with Florida Statute Section 605.0702 (1)   A circuit court may dissolve a limited liability company: (b)   In a proceeding by a manager or member to dissolve the limited liability company if it is established that any one of the below conditions exist:

13

1. The conduct of all or substantially all of the company's activities and affairs is unlawful;

2. It is not reasonably practicable to carry on the company's activities and affairs in conformity with the articles of organization and the operating agreement;

3. The managers or members in control of the company have acted, are acting, or are reasonably expected to act in a manner that is illegal or fraudulent;

4. The limited liability company's assets are being misappropriated or wasted, causing injury to the limited liability company, or in a proceeding by a member, causing injury to one or more of its members; or

5. The managers or the members of the limited liability company are deadlocked in the management of the limited liability company's activities and affairs, the members are unable to break the deadlock, and irreparable injury to the limited liability company is threatened or being suffered.

Here, all the above conditions exist, and the Court should dissolve the Defendant, 982 LLC and order the distribution of the proceeds in accordance with the parties adjusted Capital Accounts.

WHEREFORE, Plaintiff demands judgment for the dissolution of 982 LLC and for such other relief as this Court deems just and proper.

### Count 4 -Breach of Fiduciary Duty (Fla. Stat §501.201 et seq)

70. Plaintiff re-alleges and adopts ¶s 1-56, in their entirety as if fully stated herein.

71. As stated in detail above, KEANE stood in a position of fiduciary by his representation to the Plaintiff.   He obtained control of the Plaintiff's home by inducing BANKS with misrepresentations and omissions to transfer title of her home to an LLC he created and the converted the proceeds of the refinance of the home's mortgage and the sales proceeds.

72. KEANE coerced Plaintiff into assigning her interest in her life insurance policy for no consideration.

73. Plaintiff and Defendant share a relationship whereby:(a) Plaintiff reposes trust and confidence in Defendant, and(b) Defendant undertakes such trust and assumes a duty to advise, counsel and/or protect Plaintiff.

74. KEANE breached his fiduciary duty to the Plaintiff as set forth above

75. As a result, Plaintiff suffered the damages detailed above.

WHEREFORE, Plaintiffs demand judgment against Defendant KEANE for compensatory

damages together with interest, court costs, attorneys' fees under Fla. Stat §501.2104, and for such other relief as this Court deems just and proper.

### Count 5 – Conversion

76.     Plaintiff re-alleges and adopts ¶s 1-56, in their entirety as if fully stated herein.

77.     KEANE, knowingly and intentionally converted to his own use the Plaintiff home and the proceeds of its refinancing and sale, and the funds stated above from her credit cards.

78.     As a result, Plaintiff has been damaged by the loss of her home and the proceeds of its refinancing and sale, as well as the loss of her life insurance.

WHEREFORE, Plaintiffs demand judgment against Defendant KEANE for compensatory damages, punitive damages, together with interest, court costs and for such other relief as this Court deems just and proper.

### Count 6 – Elder Abuse (Fla. Stat §415.1111)

79.     Plaintiff re-alleges and adopts ¶s 1-56, in their entirety as if fully stated herein.

80.     Plaintiff is a "vulnerable adult" as defined by the statute, due to her medical condition and physical disabilities as defined by Fla. Stat.

81.     KEANE financially exploited Plaintiff as set forth above resulting in her damages, including the loss of her home and the proceeds of the home's sale.

WHEREFORE, Plaintiffs demand judgment against Defendant KEANE for compensatory damages together with interest, punitive damages, court costs and attorney's fees under Fla. Stat. §415.1111 and for such other relief as this Court deems just and proper.

### Count 7 – Civil Conspiracy

82.     Plaintiff re-alleges and adopts ¶s 1-56, in their entirety as if fully stated herein.

83. KEANE, acting in concert with the other Defendants, engaged in a conspiracy to defraud the Plaintiff and essentially steal her home through the fraudulent acts as outlined above.

84.     Each of the Defendants engaged in overt act in pursuance of the conspiracy.

15

85.     Plaintiff suffers damage as a result of the acts performed through the conspiracy.

WHEREFORE, Plaintiffs demand judgment against Defendants KEANE, 982 LLC, GLOBAL, SFNY, UTRERA, SPIEGEL & UTRERA, P.A., WHITE and FLORIDA CAPITAL for compensatory damages together with interest, court costs and for such other relief as this Court deems just and proper.

### Count 8- Legal Malpractice

86.     Plaintiff re-alleges and adopts ¶s 1-56, in their entirety as if fully stated herein.

87.     As set above, the Defendants UTRERA, and SPIEGEL & UTRERA, P.A., represented Banks, as well as KEANE and his corporate entities in the transactions involving 982 LLC and the ultimate transfer of Plaintiff's home to said LLC and the conversion by the other Defendants of the refinance and sales proceeds of the home.

88.     Defendants UTRERA, and SPIEGEL & UTRERA failed to advise of conflicts of interest, breached their duty to the Plaintiff to protect her interests in the transactions.

89.     As a result of the Defendants' malpractice set forth above Plaintiff has been damaged as set forth above.

WHEREFORE, Plaintiffs demand judgment against Defendants UTRERA, and SPIEGEL & UTRERA, P.A., for compensatory damages together with interest, court costs and for such other relief as this Court deems just and proper.

### Count 9 - Injunctive Relief

90.     Plaintiff re-alleges and adopts ¶s 1-56, in their entirety as if fully stated herein.

91.     This is an action to enjoin KEANE and his entities from 1) Continuing with the prosecution of his NY lawsuit and 2) to enjoin him and his entities from removing any proceeds of the refannce and sale of Plaintiff's home.

92.     With respect to KEANE's NY lawsuit, each of his causes of action relate to the Operating Agreement of 982 LLC, a Florida Limited Liability Corporation.   The Operating

Agreement, Section 9.10, provides that the exclusive remedy for any disputes between the parties, whether arising under the agreement or otherwise, shall be referred to a court certified mediator of the County Court in the County of the Principal Office of the Company (i.,e. Miami, Florida), and if unresolved, to be arbitrated in Miami-Dade County, and Judgement to be entered in accordance with Fla. Stat Chapter 682. Moreover, 9.10.4 provides the right to injunctive relief to enforce the above section.

93.     Moreover, there is no jurisdiction in NY over Plaintiff and 982 LLC's only operations were taking and selling Plaintiff's home in Pembroke Pines.

94.     Since the adjusted Capital Account of 982 LLC, based on the parties' respective contributions – nothing from KEANE and a $960,000 from the Plaintiff, any funds that were wired to any accounts from the sales and refinance proceeds should be frozen and KEANE and his entities enjoined from removing them to prevent the irreparable harm of Plaintiff remaining homeless.

WHEREFORE, Plaintiff demands judgment for injunctive relief against KEANE and any entity he controls, including those listed as Plaintiffs in his NY lawsuit, all of whom are defendants herein, and also, Keen Vision Group Co., Keen Vision Properties, LLC, SFNY Group, Inc.

### Demand for Jury Trial

Plaintiff hereby demands a trial by jury of all issues so triable.

Respectfully Submitted,

**THE PIVNIK LAW FIRM**
7700 N. Kendall Dr., Suite 703
Miami, FL 33156
Ph. (305) 670-0095
JPivnik@Pivniklaw.com
PivnikLaw@aol.com

By:   **s/Jerome A. Pivnik, Esq.**
Jerome A. Pivnik, Esq.
Fla. Bar No. 400408

17